# MICHAEL B. SCHULMAN & ASSOCIATES, P.C.
ATTORNEYS AND COUNSELORS AT LAW
145 PINELAWN ROAD, SUITE 310N
MELVILLE, NEW YORK 11747
TELEPHONE · (631) 622-2080
FAX · (631) 622-2084
E-MAIL ADDRESS: mschulman@mbslegal.com

MICHAEL B. SCHULMAN

MELISSA N. BEIGEL+
KIM M. CARDALENA*
+ Member of NY & Florida Bar
* Member of NY & New Jersey Bar

LAURENCE T. TRACT
*of Counsel*
LINDA T. BEIGEL
*Paralegal*

September 15, 2009

**File by ECF**

Honorable Arthur D. Spatt
United States District Court
Eastern District of New York
100 Federal Plaza, Room 1020
P.O. Box 9014
Central Islip, New York  11722

       Re:       **Michael Miness, et al vs. Surinder Ahuja, et al**
       CV No.:  **09-CV-2794 (ADS)(WDW)(ECF)**

Dear Justice Spatt:

      This letter is written in response to the letter of Jeffrey Rosenberg, attorney for the plaintiffs, dated September 11, 2009 and the affidavit of Michael Miness annexed thereto which requests to expand the parameters of the Rule 56 pre-motion conference scheduled for September 22, 2009 to encompass a "discussion and scheduling order" seeking disqualification of this firm as counsel for the defendants.

      The gamesmanship exhibit in this frivolous application on the part of the plaintiffs should not be countenanced by this Court.  This application by plaintiffs is a thinly veiled attempt at coercing defendants and to distract this Court from the real issues in this litigation, wasting the Court's time and causing the defendants' unnecessary attorney's fees and costs.  The Courts have recognized that there are instances where a party attempts to seek the disqualification of the other party's attorney in order to gain some litigation advantage.  "Motions to disqualify are subject to strict scrutiny because of their potential to be used for tactical purposes". **(Ragdoll Productions v. Wal-Mart Stores, 1999 Us Dist LEXIS 14828, SDNY, 1999)** Even the case cited by plaintiffs' counsel **(Shabbir v. Pakistan Intern. Airlines, 443 F. Supp 2d 299, at 305)** notes "[d]isqualification motions have become increasingly popular tools of the litigation

Page 2

process, being used…for purely strategic purposes". This is exactly what the plaintiffs are doing by making this application.

It is respectfully submitted to this Court that the affidavit of Michael Miness is inaccurate and borders on outright perjury. The Court needs to look no further than the third paragraph of the affidavit of Michael Miness sworn to under the penalties of perjury. Miness swears under the penalties of perjury in an attempt to disqualify this firm that he loaned me money in 2007 and that it took "seven months to a year to repay this loan". This is completely untrue and Miness knows that it is untrue. The loan made by Miness was made on March 8, 2006, not in or about 2007. More importantly, the loan was repaid less than one month later, on April 5, 2006, not seven months to a year as sworn to by Miness. **(Exhibit A)**. This is information that Miness could have easily verified by his own records. How can this Court believe or trust anything else contained in the Miness affidavit when he is clearly not being truthful about this documented transaction. Another example of the misstatements in the affidavit is in paragraph 10. The first closing did not occur on or about January 31, 2007 as sworn to by Miness, it occurred on August 27, 2008. These are factual allegations made by Miness that are shown to be totally inaccurate by documentary evidence and therefore, irrefutable.

I want to state emphatically and without reservation, that Miness does not claim, that this office ever represented Michael Miness or anyone in the Miness family in any litigation whatsoever. The plaintiff, Michael Miness, and I were social friends at a golf club in which there would often be discussion about personal and business issues. We were social friends who played golf on a more and more infrequent basis until Mr. Miness resigned his membership at Old Westbury effective January 1, 2009.

Mr. Miness had never been in my office and we had never discussed my representing him in any matter, let alone this matter. I have known for many years that Mr. Miness has a very close friend of over thirty (30) years, Francis Deegan, who is an attorney and who has represented Miness in almost every business related matter. (The Deegan Law Firm)

A careful review of the affidavit submitted by Miness shows unequivocally that none of the conversations we ever had were in any way confidential or as a "prospective client", but purely in a social setting where Miness was talking to anyone who was in earshot about his alleged problems with the defendants. In fact, Mr. Miness admits that at least one such conversation, to wit: the December 28, 2008 conversation was in the presence of a third party, Howard Gershowitz. According to the Miness affidavit, many of the alleged "confidential" conversation took place in the presence of Mr. Gershowitz. (Paragraphs 16, 17, 18, 19, 20, and 21) Therefore, as a matter of law, any conversations that we had at that time were not confidential. Additionally, the allegations made in the Miness affidavit as to the content of these conversations is just a repetition of the allegations contained in plaintiffs' complaint, no more.

   Nor could or would I have presumed that any of our discussions were to be confidential in nature or rise to the level of a "prospective client" since Miness was represented by competent legal counsel (The Deegan Law Firm) during this entire period of time from the negotiations, drafting and execution of the Stock Purchase Agreements on January, 31 2007, through the Second Closing on January 27, 2009. Knowing that Miness was being represented by his long time counsel, it is inconceivable that Miness would possibly believe that he thought his comments to me were intended to be confidential or as a "prospective client". After all, the Deegan Law Firm negotiated the Stock Purchase Agreements, the Amendments along with all of the ancillary documents, and the Miness Employment Agreement.

   As for the date that Mr. Miness was terminated, he did telephone me to tell me that he was terminated. He told me that he was in the process of clearing out his office. I asked him what he was going to do and he told me that he was turning all of the information he had over to the Deegan Law Firm since they had represented him with regard to this transaction itself. I was under the distinct impression that as of the date of his termination, he was retaining the Deegan Law Firm to represent him in this matter.

   Mr. Miness further states that after he retained Jeffrey Rosenberg as his counsel, he had no further discussions with me at all concerning this situation which had given rise to this litigation. Mr. Miness retained Mr. Rosenberg on or before May 6, 2009, approximately one week after he was terminated by the defendants. However, Mr. Miness was inaccurate and incorrect when he stated in his sworn affidavit that he had no further communication with me after that date. In fact, the "Dunkin Donuts" meeting occurred on or about May 7, 2009. At that time, Mr. Miness advised me that he had retained counsel to represent him in this matter. I never asked about whom he had retained, again assuming that the counsel that he had retained was the Deegan Law Firm. I do agree, though, with Mr. Miness that after the meeting at Dunkin Donuts, we had no further communication about this matter.

   It is also important to note that at no time up until the point that I was retained by the defendants, had I ever seen any of the documents relating to this litigation. This includes the entire time prior to the termination of the plaintiff by the defendants. I never asked to see, nor was it ever offered, for me to review any of the documents. Nothing in the Miness affidavit shows any discussion with me about confidential information that he had not discussed socially with others including Mr. Gershowitz.

   The outright hypocrisy and motivation of the plaintiffs for this application is demonstrated by the action of the plaintiff and his counsel AFTER the Court originally denied their application for a conference on this very issue, and have waived any right to now seek my disqualification based on supposed confidential communications. Additionally, Plaintiffs' counsel offers no explanation why he waited almost six (6) weeks to make this application again after being advised that this firm was not going to

Page 4

withdraw as defendants' counsel and only raises this issue after being served with a Motion to Dismiss which they have refused to file any opposition thereto.

This very issue was raised by Mr. Rosenberg on July 21, 2009 in a fax/letter communication to the Court in which Mr. Rosenberg requested a conference on this very issue. The Court denied that request on July 22, 2009. Subsequent to that date, Mr. Rosenberg approached me in an attempt to resolve this matter. I expressed to him my concern that since he has raised the issue of my disqualification that there would be a cloud over me if we entered into said negotiations at this time. He responded that he did not feel that there would be any cloud in us discussing a possible settlement and in fact we did meet to discuss settlement on July 29, 2009 at the Old Westbury Golf and Country Club. **(Exhibit B is a series of e-mails between Mr. Rosenberg and myself). It was agreed that the content of that meeting would be kept confidential**

One must ask that if plaintiffs and their counsel felt that I was violating any canon of professional ethics, why was it not proper for me to represent these defendants in the litigation, but it was proper for me to engage in settlement discussions, since any "confidential" information disclosed by Mr. Miness prior to that meeting to me would still be in play. However, what is abundantly clear from Mr. Rosenberg in his e-mail of July 23, 2009, was that he felt it would be permissible for me to enter into settlement negotiations. (There is an additional e-mail from Mr. Rosenberg which expands on this issue but labeled by him **CONFIDENTIAL COMMUNICATION IN PURSUANCE OF SETTLEMENT.** It is therefore not included in the e-mails made part of Exhibit B.)

With the negotiations having been unsuccessful, and after defendants made their Motion in August for an Order dismissing plaintiffs' Complaint, it was some two (2) weeks later before defendants made the within application. It appears that the true purpose of this application is to avoid responding to defendants' motion to dismiss. In fact, under separate submission, we are asking that the Court enter an Order dismissing the plaintiffs' Complaint for the plaintiffs' willful, intentional and deliberate refusal to file an opposition thereto. Their only opposition is this transparent attempt to have me disqualified.

Also, what I find unfortunately amusing, is that the plaintiffs have been complaining that the defendants were attempting to stall this litigation. As can be seen from this very application, nothing can be further from the truth. It is the plaintiffs who are trying to stall this litigation. It is the plaintiff and his counsel who are stalling this litigation by bringing this frivolous application. It is plaintiff and his counsel who have refused to respond to defendants' Motion to Dismiss.

As this application by the plaintiffs is to "expand" the Pre-Motion Conference scheduled for September 22, 2009, it is respectfully requested that that application be denied. If the plaintiffs choose to make their Motion, then let them make it under the proper form and in the proper manner.

Page 5

      Thanking you in advance for your consideration.

Very truly yours,

Michael B. Schulman & Associates, P.C.

By: _____
Michael B. Schulman

MBS:DS

cc:    Jeffrey Rosenberg, Esq.