UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL MINESS,

                              Plaintiff,

               -against-

SURINDER AHUJA, VEENA AHUJA,
SANJAY AHUJA, the AHUJA FAMILY
TRUST, NAMITA MOHAN, and VANITA
MUDGIL,

                            Defendants.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
09-cv-2794 (ADS)(WDW)

**APPEARANCES:**

**Jeffrey L. Rosenberg & Associates, LLC**
*Attorneys for the plaintiff*
46 Morgan Drive
Old Westbury, NY 11568
       By:     Jeffrey L. Rosenberg, Esq., of Counsel

**Michael B. Schulman & Associates, P.C.**
*Attorneys for the defendants*
145 Pinelawn Road
Suite 310N
Melville, NY 11747
       By:     Michael B. Schulman, Esq., of Counsel

**SPATT, District Judge.**

This case concerns a dispute over the plaintiff's sale to the defendants of nursing homes located in Glen Cove and Port Jefferson, New York. Currently pending before the Court are two motions: (1) a motion by the defendants to compel arbitration and stay the proceedings, and (2) a motion by the plaintiff to disqualify counsel for the defendants, Michael B. Schulman, Esq. For the reasons that follow, the Court denies the defendants'

motion to compel arbitration and stay proceedings, and directs the parties to appear for an evidentiary hearing regarding the plaintiff's motion to disqualify attorney Schulman.

## I. BACKGROUND

Prior to January 30, 2007, Plaintiff Michael Miness and his children (the "Miness Family") owned a nursing home business with operations located in Port Jefferson and Glen Cove, New York. The Miness Family organized the business using four legal entities, all of which they owned: Glengariff Holding Corp., ("Glengariff Holding"), Glengariff Corporation ("Glengariff Operating"), Glen-Haven Holding Corp. ("Glen-Haven Holding"), and Glen-Haven Residential Health Care Facilities, Inc. ("Glen-Haven Operating"). Glengariff Holding and Glen-Haven Holding held title to the business's real property in Glen Cove and Port Jefferson; Glengariff Operating and Glen-Haven Operating (together, the "Operating Companies") controlled the management of each of these facilities.

Pursuant to stock purchase agreements signed January 30, 2007 and January 31, 2007, and amended August 28, 2008 (the "Purchase Agreements"), Miness and his children sold the four corporations that owned the assets of the nursing home business to the defendants Surinder Ahuja, Veena Ahuja, the Ahuja Family Trust, Namita Mohan, and Vanita Mudgil. The Purchase Agreements also provided that, upon the final consummation of the defendants' purchase of the business, the Operating Companies were to hire Miness as a consultant for the business for two years, pursuant to certain conditions. On January 27, 2009, two years after the first versions of the Purchase Agreements were signed, the defendants took full ownership of all four legal entities that

owned the assets of the business. Also on that date, the Operating Companies and Miness executed an employment contract (the "Miness Employment Agreement") retaining Miness as a consultant for a term of two years.

One of the conditions contained in the plaintiff's employment agreement was what the parties refer to as a "census requirement," which provided that the Operating Companies could terminate the plaintiff's employment prior to the end of his two year term if, for any given three month period, the occupancy of the nursing homes averaged less than 90%. The parties agree that this occupancy requirement was not met between January 28, 2009 and the end of April, 2009. Thus, on April 28, 2009, the Operating Companies—now owned by the defendants—terminated Miness pursuant to the census requirement provision.

On July 1, 2009, Miness filed the present lawsuit. In general, Miness asserts that the defendants defrauded him into selling his nursing home business by falsely promising to make certain improvements to the business, and by falsely promising to retain him as a consultant to the business on favorable terms. Miness further alleges that the defendants economically coerced him into agreeing to be bound by the 90% census requirement, knowing that this requirement could not be met and that the defendants could use this provision to evade their obligation to retain him as a consultant. Based on these allegations, Miness asserts several causes of action, including claims for federal securities fraud; common law fraud; and negligent misrepresentation. In addition, the complaint contains claims for breach of the Purchase Agreements and for breach of the Miness Employment Agreement. Finally, the plaintiff also asserts two declaratory judgment

causes of action requesting that the Court declare that the plaintiff's termination of employment with the Operating Companies was not valid.

There are two motions now pending before the Court in this case. The first is by the defendants, who seek to compel the plaintiff to arbitrate his present claims for breach of the Miness Employment Agreement and declaratory judgment, and also seek to stay the remainder of this action during the arbitration. For this motion, the defendants rely on a provision of the Miness Employment Agreement that provides that, "[i]f any dispute arises between the parties hereto, it shall be settled by arbitration held within the County of Nassau, State of New York, before an arbitrator of the American Arbitration Association." (Miness Employment Agreement, ¶ 13(h).) The plaintiff opposes this motion.

In the second motion, the plaintiff seeks to disqualify Attorney Schulman. According to the plaintiff, prior to the commencement of this lawsuit, defense counsel Schulman had significant confidential discussions with the plaintiff concerning the transactions underlying the present action, and, therefore, Schulman cannot ethically serve as attorney for the defendants. Defense counsel Schulman denies the plaintiff's factual assertions, and the defendants oppose the motion.

## II. DISCUSSION

**A. As to the Defendants' Motion to Compel Arbitration and Stay the Action**

The defendants seek to enforce a provision of the Miness Employment Agreement that requires the plaintiff to arbitrate disputes that arise between the parties to that agreement. The plaintiff opposes this motion on the grounds that none of the named

defendants is a party to the Miness Employment Agreement, and thus the defendants have no standing to enforce the terms of the contract. In addition, the plaintiff contends that, even if the defendants were capable of enforcing the contract's provisions, the present dispute is not "between the parties [to the Miness Employment Agreement]," and thus it is not within the scope of the contract's arbitration provision. The Court agrees.

First, the only signatories to the Miness Employment Agreement are Miness and the Operating Companies. The Operating Companies are not parties in this action, and thus cannot invoke its provisions in this case. As for the defendants, none are party to the Miness Employment Agreement, and unless they are explicit third party beneficiaries of the contract, they cannot enforce its terms. See Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) ("A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[ ] an intent to permit enforcement by the third party' in question," quoting Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985)). Here, there is nothing in the Miness Employment Agreement that suggests that the defendants have a right to enforce the contract as third parties.

Moreover, even if the defendants did have standing to enforce the Miness Employment Agreement, the Court finds that its plain language requires arbitration of disputes between Miness and the Operating Companies, but does not require arbitration of disputes among other parties. (Miness Employment Agreement, ¶ 13(h) ("If any dispute arises *between the parties hereto* [that is, between Miness and the Operating Companies], it shall be settled by arbitration . . . .") (emphasis added).) The present

dispute is between the plaintiff and the defendants, not between the plaintiff and the Operating Companies.  While it is true that the defendants now own the Operating Companies, there is no indication from either party that it is appropriate to pierce the corporate veil of these entities.  Thus, the present dispute does not fall within the terms of the arbitration provision of the contract.

Nevertheless, the defendants "suggest that this Court join [the Operating Companies as] necessary parties pursuant to Rule 19, *sua sponte*." (Defs.' Reply in Support of Motion to Arbitrate at 6.)  The defendants assert that the Operating Companies have interests that are vital to the present action, and that once they are joined, they will have standing to enforce the arbitration provision of the Miness Employment Agreement.

As a preliminary matter, the Court notes that the defendants' request is not proper.  When a Court acts *sua sponte*, it does so without prompting from any of the parties at bar.  Here, the defendants have provided five pages of legal reasoning in support of their request for joinder.  The Court could not now in fairness grant this relief without permitting the plaintiffs to respond to the defendants' request.  Although the defendants assert that they are merely "suggesting" that the Court act "*sua sponte*," it is the Court's view that the defendants' request amounts to an improperly noticed motion to join.

However, disregarding this irregularity, the Court does not view the Operating Companies as necessary parties in this case.  Fed. R. Civ. P. 19 provides that a party is necessary to an action and must be joined when:

> (A) in that person's absence, the court cannot accord complete relief
> among existing parties; or

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a); see also, Viacom Intern., Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000). Here, the plaintiff has not alleged any violations by the Operating Companies, and seeks compensation from the defendants alone. Thus, the Court does not view the Operating Companies' presence in this case as necessary to accord complete relief among the parties. Also, at this time the Court is doubtful that the plaintiff has any valid cause of action against the defendants pursuant to the Miness Employment Agreement, as none of the defendants are party to this agreement.

In the Court's view, there is no basis for compelling the arbitration of any claims in the present case, and there is also no basis to stay any part of the action. As such, the Court denies in its entirety the defendants' motion to compel arbitration and stay the case.

**B. As to the Plaintiff's Motion to Disqualify Defendants' Counsel**

The plaintiff asserts that counsel for the defendants, Michael B. Schulman, Esq., should be disqualified from representing the defendants in the present case on the basis of conversations that Shulman and the plaintiff had prior to the commencement of the present lawsuit.

The parties agree that prior to the filing of this case, Miness and Schulman were both members of the same country club in Old Westbury, NY, where they maintained a social relationship and golfed together on numerous occasions. The parties also agree that Miness and Schulman discussed, at least in very general terms, the transactions between the parties that underlie the present action.

However, the parties disagree as to the scope and content of these discussions between Miness and Schulman. Miness affirms under oath that he gave Schulman extensive confidential information concerning the sale of his business to the defendants, and that Schulman at times solicited Miness as a client. Miness also asserts that Schulman is now using the confidential information he obtained from Miness for the defendants' benefit. By contrast, Schulman states under oath that he obtained no confidential information from Miness, because his conversations with Miness regarding the transactions were all superficial. Schulman further states that he never suggested to Miness that he would serve as his attorney, and that virtually all of his conversations with Miness took place in the presence of third parties, thus vitiating any confidentiality that might have otherwise attached.

New York Code of Professional Responsibility Rule 1.18 provides in pertinent part:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a "prospective client."
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation . . . .

> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d) [which no party here asserts applies]. . . .

While it is within the discretion of the Court to disqualify an attorney pursuant to this or any other rule, Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir.1994), a party seeking to disqualify an opponent party's counsel generally faces a high burden of proof in doing so. See Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir.1981) ("[r]ecognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint"); Simply Fit of North America, Inc. v. Poyner, 579 F. Supp. 2d 371, 384 (E.D.N.Y. 2008) (Spatt, J.) ("The remedy of disqualification is granted only in limited circumstances and the moving party bears a heavy burden of proving facts required for disqualification." (internal quotations omitted)).

Here, the plaintiff asserts that he gave confidential information concerning the transactions at issue to Schulman as his "prospective client," and that Schulman must be disqualified as defense counsel under Rule 1.18. Schulman denies that the plaintiff was a prospective client, and that the plaintiff provided him with confidential information concerning the transactions.

Given the divergence in the parties' description of the relevant events here, the Court finds that the plaintiff's motion to disqualify rests of issues of disputed fact. Thus, the Court directs the parties to appear before the Court on Tuesday, May 25, 2010 at 9:30

9

a.m. for an evidentiary hearing concerning the plaintiff's motion to disqualify Schulman as attorney for the defendants.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion to compel arbitration and to stay the present action is denied, and it is further

**ORDERED** that the parties are directed to appear before the Court for an evidentiary hearing concerning the plaintiff's motion to disqualify attorney Schulman on Tuesday, May 25, 2010 at 9:30 a.m.

**SO ORDERED.**

Dated: Central Islip, New York
May 20, 2010

                                                                                                                */s/ Arthur D. Spatt*
                                                                                                        ARTHUR D. SPATT
                                                                               United States District Judge